**SOUTHWESTERN STEEL & SUPPLY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 85–1819.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1986.

Decided Dec. 12, 1986.

Jon E. Pettibone, Phoenix, Ariz., for petitioner. Paul R. Madden, Phoenix, Ariz., entered an appearance for petitioner.

Stephen Smith, Attorney, N.L.R.B., with whom Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel and Howard E. Perlstein, Attorney, N.L.R.B., Washington, D.C., were on the brief, for respondent.

Before EDWARDS and WILLIAMS, Circuit Judges, and GREEN,* District Judge.

Opinion for the Court filed by Circuit Judge WILLIAMS.

WILLIAMS, Circuit Judge:

Southwestern Steel & Supply, Inc. ("the Company") entered into a multiemployer collective-bargaining agreement recognizing Local Union 75, International Association of Bridge, Structural, Reinforcing and Ornamental Iron Workers, AFL–CIO ("the Union") as the exclusive bargaining representative of a unit of field employees. The collective-bargaining agreement contained a "hiring-hall provision" obligating the Company to hire applicants exclusively by referral from the Union. The collective-bargaining agreement also provided that the Company "shall contribute" to the California Ironworkers Field Welfare Plan, and "will contribute" to the California Ironworkers Field Pension Trust, at prescribed rates. In a separate Contributing Employers Agreement ("CEA") between the Company and the trustees of the respective trusts, the Company agreed to contribute to the trusts "in accordance with the [collective-bargaining agreement] ... for the period provided in such [collective-bargaining agreement] and from year to year thereafter unless written notice revoking

---

* District Judge Joyce Hens Green of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

this Agreement is given ... at least sixty (60) days prior to any anniversary date."

Upon expiration of the collective-bargaining agreement the Company, without first bargaining to impasse with the Union, hired nonunit employees and ceased payments to the trusts. The National Labor Relations Board adopted an Administrative Law Judge's findings that the Company's unilateral conduct violated § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (5) (1982), and ordered the Company to make whole all employees, including those "who were denied an opportunity to work for [the Company] because of [its] unlawful refusal to continue using the hiring hall." 276 N.L.R.B. No. 174, at 1 n. 1 (1985). The Company petitions for review of that order and the Board cross-applies for enforcement.

An employer's unilateral change in terms or conditions of employment, so-called "mandatory subjects of bargaining," made after expiration of the collective-bargaining agreement but before the employer has bargained to impasse with the union, circumvents the duty to bargain. *NLRB v. Cauthorne,* 691 F.2d 1023, 1025 (D.C.Cir. 1982); *see NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). Thus, generally, provisions of the expired collective-bargaining agreement that relate to mandatory subjects are said to survive the agreement's expiration. *See Cauthorne,* 691 F.2d at 1025. The Company does not dispute, nor could it, that a hiring-hall provision of the type contained in the collective-bargaining agreement is a mandatory subject of bargaining. *See NLRB v. Southwest Security Equipment Corp.,* 736 F.2d 1332, 1337–38 (9th Cir. 1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985); *NLRB v.*

*Houston Chapter, Associated General Contractors, Inc.,* 349 F.2d 449, 452 (5th Cir.1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). Instead, the Company asserts that the hiring-hall provision fell into the narrow class of exceptional mandatory subjects—so far limited only to union-shop, dues-checkoff, and (to a limited degree) no-strike provisions **—that do not survive expiration of the collective-bargaining agreement. We join the only two courts of appeals that have addressed the issue in affirming the Board's decision not to except hiring-hall provisions from the general rule. *See NLRB v. Southwest Security Equipment Corp.,* 736 F.2d at 1337–38; *Sheeran v. American Commercial Lines, Inc.,* 683 F.2d 970, 977 (6th Cir.1982).

■ Armed with no more than an ambiguous Board dictum, *see Rayner,* 251 N.L.R.B. 89, 90 (1980), *enf'd as modified on other grounds,* 665 F.2d 970 (9th Cir.1982), the Company asserts that a provision may not survive expiration of the collective-bargaining agreement if it " 'governs' the employer-union relationship" in addition to the employer-employee relationship. Reply Brief for Petitioner at 4. The Company's formulation of the "exception" eviscerates the "rule"; virtually all mandatory subjects implicate the institutional employer-union relationship. *See, e.g., Midstate Telephone Corp. v. NLRB,* 706 F.2d 401, 405 (2d Cir.1983) (provision for per diem compensation and travel and lodging expenses of employee negotiators survives); *NLRB v. Cone Mills Corp.,* 373 F.2d 595, 598–99 (4th Cir.1967) (superseniority provision survives despite fact that its "primary purpose ... is to help the union further establish itself").

*See Digmor Equipment & Engineering Co.,* 261 N.L.R.B. 1175, 1175–76 (1982); *American Sink Top & Cabinet Co.,* 242 N.L.R.B. 408, 408 (1979). Under this view, the Company's invocation of the arbitration clause as another exception amounts, at best, to a complaint that the Board's order in this case is inconsistent with what the Board may do in the future.

---

** While the Board may be reevaluating its position on the survivability of arbitration clauses, *cf. Southwest Security Equipment Corp.,* 262 N.L.R.B. 665, 665 n. 1 (1981), *enf'd,* 736 F.2d 1332 (9th Cir.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1854, 85 L.Ed.2d 151 (1985); *Indiana & Michigan Electric Co.,* No. 25–CA–10549 (NLRB argued Dec. 6, 1983), it has done nothing to disturb its current position that they survive.

Contrary to the Company's assertion, the existing exceptions are not rooted in such rule-swallowing logic. The well established exceptions for union-shop and dues-checkoff provisions are rooted in § 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3), and § 302(c)(4) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(4), which are understood to prohibit such practices unless they are codified in an *existing* collective-bargaining agreement. *See, e.g., Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1502 (1962), *enf'd in relevant part sub nom. Industrial Union of Marine & Shipbuilding Workers v. NLRB*, 320 F.2d 615, 619 (3d Cir.1963), *cert. denied*, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964); *Hudson Chemical Co.*, 258 N.L.R.B. 152, 157 (1981). Similarly, that a no-strike provision does not survive except (in keeping with the strong national policy favoring arbitration, *see Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977)) if and to the extent that its correlative arbitration clause survives, *see Goya Foods, Inc.*, 238 N.L.R.B. 1465, 1467 (1978), is attributable to the union's statutory right to strike, *see* 29 U.S.C. §§ 158(d)(4), 163; *NLRB v. Lion Oil Co.*, 352 U.S. 282, 293, 77 S.Ct. 330, 336, 1 L.Ed.2d 331 (1957). A waiver of that right during the life of the collective-bargaining agreement is not a "clear and unmistakable" waiver, *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708–10, 103 S.Ct. 1467, 1477–78, 75 L.Ed.2d 387 (1983), of the right to strike beyond the contract term, *see Goya Foods, Inc.*, 238 N.L.R.B. at 1468 (Fanning, concurring); *cf. NLRB v. Lion Oil Co.*, 352 U.S. at 293, 77 S.Ct. at 336. The hiring-hall provision, in contrast, is neither a statutorily guaranteed right nor statutorily dependent upon an existing collective-bargaining agreement.

■ We likewise uphold the Board's decision to remedy the hiring-hall breach by requiring compensation for unit members who would have been employed by the Company had it hired in conformity with the provision. We are unswayed by the Company's protest that the remedy is puni-

tive because it "requires Southwestern to put two people in every job and pay each full wages and benefits." Brief for Petitioner at 16. The Company has suggested no alternative. Retroactive relief is a reasonable way (if not the only way) to compensate those who have been harmed by the Company's refusal to comply with the hiring-hall provision. *See, e.g., NLRB v. International Association of Bridge, Structural & Ornamental Iron Workers, Local 433*, 600 F.2d 770, 777–79 (9th Cir. 1979) (upholding backpay remedy for union discrimination in hiring-hall referral), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980). And the remedy is consistent with past practice. *See Southwest Security Equipment Corp.*, 262 N.L.R.B. 665, 670–71 (1982) (adopted by Board pro forma); *Clarence R. Yeager Distributing, Inc.*, 261 N.L.R.B. 847, 849 n. 10 (1982), *enf'd without opinion*, 718 F.2d 1109 (9th Cir.1983), *cert. denied*, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984); *Wayne Electric, Inc.*, 226 N.L.R.B. 409, 409 n. 3 (1976). Even when the Board does not expressly extend its make-whole order to would-be employees, as in *Watson-Rummell Electric Co.*, 277 N.L.R.B. No. 162, at 4, 6 (1985), the order is understood to encompass them, *Wayne Electric, Inc.*, 226 N.L.R.B. at 409 n. 3.

■ Finally, we reject the Company's assertion that its unilateral termination of payments to the welfare plan and pension trust did not violate any duty to bargain. Ordinarily, such payment obligations are mandatory bargaining subjects that, like the hiring-hall provision, survive expiration of the collective-bargaining agreement until the conclusion of good-faith bargaining. *American Distributing Co. v. NLRB*, 715 F.2d 446, 449 (9th Cir.1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984). The Company argues, however, that the Union waived its right to bargain over the continuation of such payments (and, therefore, the corollary right to such payments until the parties bargained to impasse). The only evidence that the Company adduces is the provision in the CEA

prescribing how and when revocation was permissible as between the Company and the respective trustees. This tidbit falls far short of the "clear and unmistakable" evidence by which the Company must demonstrate the Union's waiver of a statutory right. *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 708–10, 103 S.Ct. 1467, 1477–78, 75 L.Ed.2d 387 (1983); *Local Union 1395, IBEW v. NLRB,* 797 F.2d 1027, 1029 (D.C.Cir.1986). The provision amounts to no more than a right of the Company to terminate its agreement with the trustees, subject to an obligation to give timely notice. That qualified right to terminate can naturally be construed as coming into play only after the Company has complied with its statutory duty to bargain; thus, it is consistent with the survival of the unequivocally expressed duty to contribute. We decline to find a clear and unmistakable waiver in such circumstances, especially when the Union was not even a party to the document containing the alleged "waiver." *Compare Hennepin Broadcasting Associates, Inc.,* 272 N.L.R.B. 237, 237–38 (1984) (collective-bargaining agreement expressly provided that terms of trust agreement, giving employer right to terminate unilaterally, "control the Employer's obligation hereunder"); *Cauthorne Trucking,* 256 N.L.R.B. 721, 722 (1981) (not clear whether union was party to pension agreement that unambiguously provided for termination of benefits upon expiration of collective-bargaining agreement), *modified on other grounds,* 691 F.2d 1023 (D.C.Cir. 1982).

\* \* \*

The Company's petition for review is denied and the Board's cross-application for enforcement is granted.

*So ordered.*