**LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, Culinary Workers Union Local 226, and Bartenders Union Local 165 affiliated with Hotel Employees International Union, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 00–71138.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2001.

Filed Oct. 28, 2002.

Michael T. Anderson, San Francisco, CA, argued the cause for the petitioner. Barry Jellison, San Francisco, CA, assisted on the brief.

Charles Donnelly, Supervisory Attorney, National Labor Relations Board, Washington, DC, argued the cause for the respondent. Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Washington, DC, assisted on the brief.

Before CANBY, JR., GRABER, and PAEZ, Circuit Judges.

## OPINION

PAEZ, Circuit Judge.

Petitioner Local Joint Executive Board of Las Vegas, Culinary Workers Union Local 226 and Bartenders Union Local 165

("the Union"),[1] petitions for review of a National Labor Relations Board ("NLRB" or "the Board") order dismissing its consolidated complaints against Hacienda Resort Hotel and Casino and Sahara Hotel and Casino ("the Employers"). The Board concluded that the Employers had not violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. §§ 158(a)(1) and (5), in unilaterally discontinuing dues-checkoff after expiration of their collective bargaining agreements with the Union. The Union contends that, in the absence of a union security provision in the expired agreement, an employer's obligation to abide by a dues-checkoff arrangement survives expiration of the contract under the "unilateral change doctrine" of *NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Accordingly, the Union argues that the Employers committed an unfair labor practice in violation of sections 8(a)(1) and 8(a)(5) of the Act when they unilaterally terminated dues-checkoff before bargaining to agreement or impasse. We have jurisdiction under section 10(f) of the NLRA, 29 U.S.C. § 160(f), and grant the petition for review. Because we are unable to discern the Board's rationale for excluding dues-checkoff from the unilateral change doctrine in the absence of union security, we grant the petition for review, vacate the decision of the Board, and remand so that the Board can articulate a reasoned explanation for the rule it adopted, or adopt a different rule and present a reasoned explanation to support it.

## I. BACKGROUND

The Employers and the Union had collective bargaining relationships for more than 30 years. The Employers had separate, but substantially identical, agreements with the Union. The most recent agreements contained the following dues-checkoff provision under which the Employers agreed to deduct union dues directly from employee paychecks and remit them to the Union:[2]

> The Check Off Agreement and system heretofore entered into and established by the Employer and the Union for the check-off of Union dues by voluntary authorization, as set forth in Exhibit 2, attached to and made part of this Agreement, shall be continued in effect for the term of this Agreement.

The State of Nevada, where the Employers are located, is a "right-to-work" state.[3] Under section 14(b) of the LMRA, 29 U.S.C. § 164(b), the agreements legally could not, and therefore did not, include a union security provision requiring union

---

1. Petitioner Local Joint Executive Board of Las Vegas is a committee of two local labor unions, Culinary Workers Union Local 226 and Bartenders Union Local 165. Local 226 and Local 165 are affiliated with the Hotel Employees and Restaurant Employees International Union (AFL CIO).

2. Although section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, generally prohibits payments from employers to unions, it creates an exception for dues-checkoff:

   > The provisions of this section shall not be applicable ... with respect to money de-

ducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner[.]

Section 302(c)(4), 29 U.S.C. § 186(c)(4).

3. Nev.Rev.Stat. § 613.250.

membership as a condition of employ-ment.[4]

Both agreements expired on May 31, 1994. The Employers continued to abide by the dues-checkoff arrangement for more than a year after expiration of the agreements. In June 1995, however, after notifying the Union, the Employers ceased giving effect to the dues-checkoff provision in the expired agreements and thereafter redirected amounts, which previously had been deducted and remitted to the Union, to their employees as part of their regular wages.

On October 26, 1995, the General Counsel for the Board issued consolidated complaints alleging that the Employers' unilateral termination of dues-checkoff, without bargaining to impasse, constituted an unfair labor practice in violation of sections 8(a)(1) and 8(a)(5) of the Act, 29 U.S.C. §§ 158(a)(1) and (5). The administrative law judge ("ALJ") dismissed the complaints solely on the basis of the text of the dues-checkoff provision in the collective bargaining agreements, noting that it was therefore "unnecessary to examine the state of the law on checkoff clauses, whether in right-to-work States or otherwise, with an eye to changing it." The ALJ concluded that "the most reasonable interpretation of [the dues-checkoff provision] is that the system would continue through the duration of the contract but would not survive thereafter."

Although the Board affirmed the dismissal, it explicitly rejected the ALJ's reliance on the text of the dues-checkoff provision. In concluding that the Employers' unilateral termination of dues-checkoff did not violate the *Katz* prohibition against unilateral changes and, therefore, did not constitute an unfair labor practice under

sections 8(a)(1) and 8(a)(5) of the Act, the Board relied on "well-established precedent that an employer's obligation to continue a dues-checkoff arrangement expires with the contract that created the obligation." The Board traced its rule excluding dues-checkoff from the unilateral change doctrine to its decision in *Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1502 (1962), *enforced in pertinent part, Bethlehem Steel Co. v. NLRB*, 320 F.2d 615(3d Cir.1963). As evidence that its rule is "well-established," the Board cited numerous Board and court cases citing the holding of *Bethlehem Steel* for the proposition that an employer's checkoff obligation does not survive the contract that created the obligation. Two members of the Board dissented, stating that "[t]he Board has never acknowledged that the result in these cases cannot be justified under the original *Bethlehem Steel* rationale, nor has it ever attempted to articulate a substitute rationale that would justify the broader rule the majority reaffirms today."

## II. ANALYSIS

■ Sections 8(a)(5) and 8(d) of the NLRA, 29 U.S.C. §§ 158(a)(5) and (d), make it an unfair labor practice for an employer to refuse to bargain "in good faith with respect to wages, hours, and other terms and conditions of employment." In *Katz*, 369 U.S. at 747, 82 S.Ct. 1107, the Supreme Court affirmed the Board's determination that an employer violates its obligation to bargain in good faith if it imposes unilateral changes in mandatory subjects of bargaining—"wages, hours, and other terms and conditions of employment"—before bargaining to agreement or impasse over the relevant

---

**4.** Section 14(b) of the LMRA permits states and territories to enact what are commonly known as "right-to-work" laws prohibiting

"agreements requiring membership in a labor organization as a condition of employment." 29 U.S.C. § 164(b).

term. Therefore, an employer must maintain the *status quo* after the expiration of a collective bargaining agreement until a new collective bargaining agreement has been negotiated or the parties have bargained to impasse. *NLRB v. Carilli*, 648 F.2d 1206, 1214 (9th Cir.1981).

■ It is undisputed that union security and dues-checkoff are mandatory subjects of bargaining. *Bethlehem Steel*, 136 N.L.R.B. at 1502. However, in *Bethlehem Steel*, the Board concluded that the employer had not committed an unfair labor practice under sections 8(a)(1) and (5) of the Act when, after expiration of its agreement with the union, it unilaterally ceased giving effect to both provisions of the expired agreement. *Id.* With regard to union security, the Board reasoned that "[t]he acquisition and maintenance of union membership cannot be made a condition of employment except under a contract which conforms to the proviso to Section 8(a)(3)." *Id.* On the basis of its interpretation of section 8(a)(3) as prohibiting union security arrangements in the absence of an existing agreement, the Board reasoned that, upon expiration of the contract, "the union-security provisions become inoperative and no justification remains for either party to the contract thereafter to impose union-security requirements." *Id.* Accordingly, the Board concluded that the employer's refusal to enforce the union security provision of the expired collective bargaining agreement was "in accordance with the mandate of the Act." *Id.*

Turning to the employer's obligation to continue dues-checkoff after expiration of the agreement, the Board noted that "[s]imilar considerations prevail." *Id.* The Board found that "[t]he checkoff provisions in [the] contracts with the Union implemented the union-security provisions." *Id.* The Board reasoned that "[t]he Union's right to such checkoffs in its favor, like its

right to the imposition of union security, was created by the contracts and became a contractual right which continued to exist so long as the contracts remained in force." *Id.* Thus, the Board concluded that, "when the contracts terminated, the [employer] was free of its checkoff obligations to the Union." *Id.*

Unlike the agreements in *Bethlehem Steel*, the collective bargaining agreements at issue here do not contain a union security provision. Although the Board acknowledged that its rule excluding dues-checkoff from the unilateral change doctrine "initially developed in the context of a contract containing both union security and dues-checkoff," rather than offering any explanation for its applicability in the absence of union security, the Board simply concluded that the rule announced in *Bethlehem Steel* "has clearly come to stand for the general rule that an employer's dues-checkoff obligation terminates at contract expiration."

The Board and the Union frame their arguments primarily in terms of whether the Board's rule excluding dues-checkoff from the unilateral change doctrine in the absence of union security is "rational and consistent" with the Act. The AFL–CIO, appearing as amicus curiae, argues that the case should be remanded because the Board has yet to provide a reasoned explanation for excluding dues-checkoff from the unilateral change doctrine in the absence of union security. We agree. We are unable to discern the Board's rationale for excluding dues-checkoff from the unilateral change doctrine in the absence of union security, and, therefore, we vacate the decision of the Board and remand so that the Board can either articulate a reasoned explanation for its rule or adopt a different rule with a reasoned explanation to support it.

## A. APPLICABLE LEGAL PRINCIPLES

■ The exclusion of dues-checkoff from the scope of the unilateral change doctrine represents the Board's interpretation of the NLRA's requirement that participants in the collective bargaining process bargain in good faith. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). We therefore must defer to the Board's rule if (1) it is " 'rational and consistent with the Act,' " *see Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 364, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) (quoting *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987)); and (2) the Board's " 'explication is not inadequate, irrational or arbitrary,' " *see id.* (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963)); *see also Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir.2000). Here, we conclude that the Board's explication of its rule excluding dues-checkoff from the unilateral change doctrine in the absence of union security is inadequate, and, therefore, we do not reach the question whether the Board's substantive rule is "rational and consistent" with the Act.

■ Although the NLRB, unlike all other major federal administrative agencies, promulgates most of its legal rules through adjudication rather than formal rulemaking, the Board remains subject to the scheme of reasoned decisionmaking established by the Administrative Procedure Act. *Allentown Mack*, 522 U.S. at 374, 118 S.Ct. 818(citing *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)); *Sever*, 231 F.3d at 1164. Under this standard, "[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Allentown Mack*, 522 U.S. at 374, 118 S.Ct. 818. Because the focus of this requirement is on the rationality of an agency's decisionmaking process rather than on the actual decision, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs.*, 463 U.S. at 50, 103 S.Ct. 2856; *see also Allentown Mack*, 522 U.S. at 374, 118 S.Ct. 818(citing *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)). We will, however, " 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S.Ct. 2856(quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

## B. THE BOARD'S RATIONALE FOR EXCLUDING DUES-CHECKOFF FROM THE UNILATERAL CHANGE DOCTRINE IN THE ABSENCE OF UNION SECURITY CANNOT REASONABLY BE DISCERNED

■ Although a Board rule may become "well-established" through repetition, it may "come to stand for" a legal rule only through reasoned decisionmaking. *Allentown Mack*, 522 U.S. at 374, 118 S.Ct. 818; *Sever*, 231 F.3d at 1164. A survey of the cases on which the Board relies as evidence that its rule excluding dues-checkoff from the unilateral change doctrine is "well-established" reveals that the Board has yet to offer an explanation, beyond that provided in *Bethlehem Steel*, for excluding dues-checkoff from the unilateral change doctrine in the absence of union security. All these cases either rely on *Bethlehem Steel* or cases that, in turn, rely on *Bethlehem Steel*. The Board has applied its rule in only one case in which the collective bargaining agreement did not contain a union security provision, but it

provided no rationale for doing so beyond that offered in *Bethlehem Steel.* *See Tampa Sheet Metal Co.*, 288 N.L.R.B. 322, 326 n. 15 (1988) (citing *Robbins Door & Sash Co.*, 260 N.L.R.B. 659 (1982)). All paths therefore lead to *Bethlehem Steel.* Accordingly, we must discern the Board's rationale for its rule excluding dues-checkoff from the unilateral change doctrine in the absence of union security from its decision in *Bethlehem Steel.*

The Board found that the dues-checkoff arrangement implemented the union security provision. The Board's finding creates substantial ambiguity in the rationale underlying *Bethlehem Steel's* holding regarding dues-checkoff. In holding that the dues-checkoff obligation did not survive the contract in *Bethlehem Steel,* the Board stated that "similar considerations prevail" regarding the survivability of union security and dues-checkoff. *Bethlehem Steel,* 136 N.L.R.B. at 1502. It is possible that the Board concluded that similar considerations prevailed because dues-checkoff implemented the union security provision and therefore should be subject to the same statutory limitations applicable to union security under section 8(a)(3). Indeed, in its decision enforcing the Board's order in *Bethlehem Steel,* the Third Circuit described the Board's rationale as follows:

> The Board concluded that Bethlehem did not violate the statute when, upon the expiration of the 1956 agreement, it discontinued enforcement of the union shop and checkoff. In this court the union does not seriously press its contention that this was error. In any event, we agree with the reasoning of the Board. The right to require union membership as a condition of employment is dependent upon a contract which meets the standards prescribed in § 8(a)(3). The checkoff is merely a means of *implementing* union security. Since there was no contract in existence

when the company discontinued these practices, its action was in conformity with the law.

*Industrial Union of Marine & Shipbuilding Workers v. NLRB,* 320 F.2d 615, 619 (3d Cir.1963) (emphasis added).

Here, the collective bargaining agreements between the Employers and the Union do not contain union security provisions. Therefore, such reasoning would not support the rule that the Board applies in this case.

It also is possible that the Board's analysis of the dues-checkoff obligation in *Bethlehem Steel* was not dependent upon the relationship between dues-checkoff and union security. However, we cannot reasonably discern such a path without further explanation from the Board. In light of the significant differences between union security and dues-checkoff, we cannot reasonably discern what considerations other than the implementation of union security provisions may have supported the Board's holding regarding dues-checkoff.

Differences in the statutory text of the respective provisions governing union security and dues-checkoff and the Board's interpretation of those provisions prevent us from reasonably inferring that the Board based its holding with regard to dues-checkoff on similar, but independent, statutory constructions. Section 302(c)(4) requires only that the employer receive "from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement. . . ." Thus, the text of section 302(c)(4) refers to the collective bargaining agreement with regard to the revocability of individual wage assignments, rather than with regard to the dues-checkoff arrangement between the

employer and the union. Moreover, although the Board has held that section 8(a)(3) prohibits union security arrangements in the absence of an enforceable agreement, *Bethlehem Steel,* 136 N.L.R.B. at 1502, the Board also has determined that an employer may continue to abide by dues-checkoff arrangements after expiration of the collective bargaining agreement without violating either section 8(a)(3), *Lowell Corrugated Container Corp.,* 177 N.L.R.B. 169, 173 (1969), or section 302 of the Act, *Gulf–Wandes Corp.,* 236 N.L.R.B. 810, 815–16 (1978).

The various court cases cited by the Board as "endorsing" or "approving" its rule further underscore our conclusion that the Board has yet to articulate clearly a rationale for its rule excluding dues-checkoff from the unilateral change doctrine in the absence of union security. Some of the cases identify the Board's finding that dues-checkoff implemented the union security provision as the basis of its holding in *Bethlehem Steel.* *See Marine & Shipbuilding Workers,* 320 F.2d at 619. Other cases describe the Board's reasoning in *Bethlehem Steel* as flowing from its interpretation of section 302(c)(4) to permit dues-checkoff arrangements only when included in an enforceable agreement. *See Litton,* 501 U.S. at 199, 111 S.Ct. 2215 ("union security and dues-checkoff provisions are excluded from the unilateral change doctrine because of statutory provisions which permit these obligations only when specified by the express terms of a collective-bargaining agreement"); *United States Can Co. v. NLRB,* 984 F.2d 864, 869 (7th Cir.1993) ("Checkoffs of dues and other payments from the employer to the union, like the enforcement of a union-security clause, depend on the existence of a real *agreement* with the union .... Otherwise the payment of money [violates section 302] ....") (italics in original; citations omitted); *Southwestern Steel & Supply, Inc. v. NLRB,* 806 F.2d 1111, 1114(D.C.Cir.1986) ("The well established exceptions for union-shop and dues-checkoff provisions are rooted in [sections 8(a)(3) and 302(c)(4)], which are understood to prohibit such practices unless they are codified in an *existing* collective-bargaining agreement.") (citations omitted). Accordingly, we conclude that the Board's rationale for excluding dues-checkoff from the unilateral change doctrine cannot reasonably be discerned.

We are mindful of the "considerable deference" we must accord Board rules. *NLRB v. Curtin Matheson Scientific, Inc.,* 494 U.S. 775, 786, 110 S.Ct. 1542, 108 L.Ed.2d 801 (1990). It is also a well-established principle of administrative law, however, that an agency must promulgate its rules through reasoned decisionmaking. *Allentown Mack,* 522 U.S. at 374, 118 S.Ct. 818; *Sever,* 231 F.3d at 1164. Because we are unable to discern the Board's rationale for excluding dues-checkoff from the unilateral change doctrine in the absence of union security, we vacate the decision of the Board and remand the case in order to afford the Board the opportunity either to articulate a reasoned explanation for its rule, or to adopt a different rule with a reasoned explanation that supports it. *See Motor Vehicle Mfrs.,* 463 U.S. at 34, 50–57, 103 S.Ct. 2856 (where agency has failed to provide a reasoned explanation for its action, the reviewing court may remand the case to the agency for further proceedings); *NLRB v. U.S. Postal Serv.,* 827 F.2d 548, 555 (9th Cir.1987) (remanding case to the Board to determine "whether to put forward a reasoned basis for its rule"). Accordingly, we do not reach the question whether such a rule would be "rational and consistent" with the Act and therefore entitled to deference.

If in the Board's opinion "similar considerations prevail" regarding union security

and dues-checkoff such that they should be excluded from the unilateral change doctrine, both in combination and individually, it is the responsibility of the Board to make its reasoning clear. On remand, the Board may determine that the policies of the NLRA are effectuated by excluding dues-checkoff from the unilateral change doctrine even in the absence of union security. It is not our role to speculate on this matter. "All we are entitled to ask is that the statute speak through the Board where the statute does not speak for itself." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 196, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

### III. Conclusion

Because we are unable to discern the Board's rationale for its rule excluding dues-checkoff from the unilateral change doctrine in the absence of union security, we grant the petition for review, vacate the decision of the Board, and remand so that the Board can articulate a reasoned explanation for the rule it adopted, or adopt a different rule and present a reasoned explanation to support it. The Union's petition for review is granted, the decision of the Board is vacated, and the matter is remanded to the Board.

**PETITION GRANTED; DECISION VACATED; REMANDED with instructions.**

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App. P. 34(a)(2).