OPINION.
{¶ 1} This is an appeal from the judgment of the Auglaize County Court of Common Pleas which denied unemployment benefits to plaintiff-appellant, USWA Local 3210 reversing the decision of the Ohio Department of Job and Family Services.
 {¶ 2} The following are facts as found by the administrative hearing officer at the hearing for unemployment benefits. The members of Local 3210 ("Union") are employed by defendant-appellee, Minster Machine Company. Union had a collective bargaining agreement ("CBA") with Minster effective April 2, 1998 through March 25, 2002. Prior to the expiration of the CBA, the parties had not reached an agreement as to the terms of the CBA renewal. Consequently, a formal extension of the former CBA was agreed to by the parties effective until 12:01 a.m.[1] on April 7, 2002. Prior to the expiration of this extension, the parties again had not agreed to certain terms of the renewal including the procedures for lay-offs and call backs. At approximately 3:30 p.m. on April 7, 2002, after the contract had expired without formally extending the CBA, Union notified Minster that it was willing to continue the terms and conditions of the former CBA while negotiations continued. In response, Minster indicated it would continue the majority of the terms and conditions of the former CBA, however, it would not agree to continue the Union dues check-off ("check-off") provision, which provides for Minster to remit dues to the Union from a Union member's paycheck. Minster asserted that the check-off provision expired by operation of law when the CBA expired. Claiming that Minster was required to continue each and every term and condition of the former CBA while negotiations continued, Union called a strike beginning at approximately, 11:00 p.m. on April 7, 2002. Subsequently, the Union filed for unemployment benefits for the time that they were on strike and on April 26, 2002, an administrative hearing was held on the matter.
 {¶ 3} On May 23, 2002, the hearing officer issued enumerated findings of fact as are recited above in relevant part and a decision. The hearing officer found that the Ohio Supreme Court case of Bays v.Shenango Co. (1990), 53 Ohio St.3d 132 governed this situation. Specifically, the hearing officer found that under Bays, if within a reasonable time following the expiration of a collective bargaining CBA, the employer changes the pre-existing terms of that CBA while negotiations are ongoing, the employer deviates from the "status quo" and has effectively "locked out" its employees entitling them to unemployment benefits. The hearing officer found that in this case, Minster refused to continue the dues-check-off provision of the former CBA while negotiations continued between Union and Minster in effort to obtain more desirable terms in the new collective bargaining CBA. Consequently, the hearing officer found that this action by Minster deviated from the status quo and effectively "locked out" the employees of Minster entitling them to unemployment benefits.
 {¶ 4} Minster appealed this decision to the Review Commission, however, the Commission denied Minster's appeal. Consequently, Minster appealed the Commission's decision to the Auglaize County Court of Common Pleas. The trial court applied both Bays and our decision in United Food Commercial Workers Union local 911, AFL-CIO, CLC v. FarmlandFoods, Inc. (Sept. 30, 1999), Seneca App. No. 13-99-17 in this case. Specifically, the trial court determined, among other things, that in order for a party to deviate from the status quo the change in terms of the contract must be material and the decision to deviate from the status quo should be evaluated to determine if it was reasonable. Finding that Minster's proposal not to continue the check-off provision was not material and was reasonable, the trial court found that Minster did not lockout Union members. Consequently, the trial court found that the hearing officer's decision was "unlawful, unreasonable and against the manifest weight of the evidence" and reversed the decision.
 {¶ 5} Union now appeals, asserting four assignments of error as follows:
 First Assignment of Error The Court of Common Pleas erred in modifying the Department'sdecision, which was not unlawful, unreasonable, or against the manifestweight of the evidence.
 Second Assignment of Error The Court of Common Pleas erred in finding that that the Department ofJobs and Family Services' conclusion that the reason for the workstoppage was the company's refusal to continued Union dues check-offprovision of the expired contract was not supported by the record.
 Third Assignment of Error The Court of Common Pleas erred in finding that this Court's holding inUnited Food and Commercial Workers Union Local 911, AFL-CIO v. FarmlandFoods, Inc., (Ohio App.3d Dist. 1999), Case no. 13-99-17, unreported,WL797039 was persuasive and applicable to the instant case.
 Fourth Assignment of Error The Court of Common Pleas erred in finding that the Department of Job'sand Family Services' conclusion that the company's offer of work and anextension of the material terms of the prior CBA on April 7, 2002amounted to a lockout was not supported by the record.
 {¶ 6} The Ohio Attorney General, on behalf of the Department of Job and Family Services asserts two additional assignment's of error.
 First Assignment of Error The Auglaize County Common Pleas Court erred in holding that Minster'srefusal to comply with the union dues check-off provision was not abreach of the status quo.
 Second Assignment of Error The Auglaize County Common Pleas Court erred in holding that Ohio'sstatus quo test for unemployment compensation benefits is defined byfederal labor law.
 {¶ 7} A party who is dissatisfied with the final determination of the Review Commission may appeal that decision to the court of common pleas. R.C. 4141.282(H). "If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence * * *" it may reverse the determination. Id.
 {¶ 8} In reviewing the Commission's decision, this court must apply the same standard of review as the lower court. Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Serv. (1995), 73 Ohio St.3d 694, paragraph one of the syllabus. Thus, we may affirm the trial court only if we find as the trial court did that the Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. Id. "[W]hile appellate courts are not permitted to make factual findings or to determine the credibility of witnesses, they do have the duty to determine whether the board's decision is supported by the evidence in the record." Tzangas at 696.
 {¶ 9} Under R.C. 4141.29(D)(1)(a), no person may be paid unemployment benefits if,
(a) The individual's unemployment was due to a labor dispute other thana lockout at any factory, establishment, or other premises located inthis or any other state or owned and operated by the employer by whichthe individual is or was last employed; and for so long as theindividual's unemployment is due to such labor dispute.
 {¶ 10} Thus, pursuant to the foregoing statute, the entitlement to unemployment compensation benefits generally hinges on whether the unemployment is due to a labor dispute other than a lockout.
 {¶ 11} The Ohio Supreme Court has addressed what constitutes a "lockout" in several decisions including, Bays, supra, and ZanesvilleRapid Transit, Inc. v. Bailey (1958), 168 Ohio St. 351. Most recently, inBays, the Court defined a "lockout" as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." See also Zanesville, supra. A lockout, however, "is not confined to an actual physical closing of the place of employment." Id. at 134 citing Zanesville, supra. Furthermore, the Court in Bays set forth the so-called "status quo" test to determine whether a lockout has occurred,
[W]hen the contract has in fact expired and a new CBA has not yet beennegotiated, the sole test under * * * the Unemployment Compensation Law,* * * of whether the work stoppage is the responsibility of the employeror the employees is reduced to the following: Have the employees offeredto continue working for a reasonable time under the pre-existing termsand conditions of employment so as to avert a work stoppage pending thefinal settlement of the contract negotiations; and has the employeragreed to permit work to continue for a reasonable time under thepre-existing terms and conditions of employment pending furthernegotiations? If the employer refuses to so extend the expiring contractand maintain the status quo, then the resulting work stoppage constitutesa `lockout' and the disqualification of unemployment compensationbenefits in the case of a `stoppage of work because of a labor dispute'does not apply.
Bays, supra quoting Erie Forge Steel Corp. v. Unemployment Comp.Bd. of Rev. (1960), 400 P.A. 440, 163 A.2d 91. However, under Bays, an employer may deviate from the status quo when it has a compelling reason for doing so. Bays at 135, citing Oriti v. Bd. of Review (1983),7 Ohio App.3d 311; see, also, Baker v. Unemp. Comp. Review Comm. (Jun. 21, 2002), Lucas App. No. L-01-1503, 2002-Ohio-3154, ¶ 14.
 {¶ 12} As noted above, the Court in Bays cited Zanesville for the proposition that a lock-out need not be physical. However, the Court inZanesville also addressed the issue of when a work stoppage is the result of a lockout,
In order to constitute a lockout, the conduct of the employer in layingdown terms must lead to unemployment inevitably in the sense that theemployees could not reasonably be expected to accept the terms, and inreason, there was no alternative for them but to leave their work.
 {¶ 13} Several courts have determined that Zanesville has been impliedly overruled by Bays or that Zanesville only applies to cases where negotiations are at an impasse between a Union and the employer which these courts allege was the case in Zanesville. See Aliff v. OhioBur. of Emp. Serv. (Mar. 9, 2001), Hamilton App. No C-000238, 2001 WL 227904; Johnson v. Ohio Bur. of Emp. Serv. (1993), 82 Ohio App.3d 293;Alsip v. Klosterman Baking Co. (1996), 113 Ohio App.3d 439. However, these decisions offer no rationale for these interpretations, and we decline to follow them.
 {¶ 14} As the Court in Bays cited Zanesville approvingly, albeit for different reasons, we cannot make the assumption that the Bays court meant to overrule Zanesville but merely failed to do so. Furthermore, while we understand that Bays by its own terms applies when a contract has expired but while negotiations continue, we cannot agree thatZanesville only applies when negotiations regarding a new CBA are at an impasse. First, we note that in Zanesville, while initially declaring an impasse, the parties continued to negotiate with an offer by the employer being sent to the Union the day before the Union went on strike and continued negotiating even after the Union went on strike. Furthermore, the case relied on by Zanesville to support its test for a lock-out involved an employment contract which had expired and where negotiations continued as in the present case. See Almada v. Admr., UnemploymentCompensation Act, 137 Conn. 380, 77 A.2d 765, 771.
 {¶ 15} In contrast to Alsip, Aliff and Johnson, we find that theBays and Zanesville decisions are consistent and should be applied together. See Albaugh v. Unemp. Comp. Review Comm. (May 11, 2001), Guernsey App. No. 00CA024 (finding that Bays and Zanesville must be interpreted together). When considering these cases together, we find that both Bays and Zanesville define lockout generally as "a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms." Bays supplements this test with the status quo test which we accept as the general rule. However, Bays provides an exception which allows an employer to deviate from the status quo for a compelling reason. We find that once it has been established that the employer deviated from the status quo for a compelling reason, Zanesville confines the application of this exception to circumstances where "the employees would be expected in reason to accept [the terms] rather than quit work." See, generally, Albaugh, supra. Consequently, even if the employer has a compelling reason to deviate from the status quo, if that change is so drastic that it would be reasonably expected that the employee would quit rather than accept the change, then the employer's deviation from the status quo constitutes a lockout.
 {¶ 16} As stated above, the Union maintains that pursuant toBays, Minster breached the status quo by terminating the check-off provision of the former CBA while negotiations for a new CBA continued. Consequently, the precise questions to be answered are: Whether Minster first deviated from the status quo after the contract expired, but while negotiations were continuing when it refused to recognize the check-off provision, whether there existed a compelling reason for Minster's deviation, and if so, whether the Union would be reasonably expected to agree to an extension for the pre-existing CBA without the check-off provision.
 {¶ 17} On April 7, 2002 Union issued a proposal to work for Minster under the same terms and conditions of the expired CBA while negotiations continued. In response, Minster accepted Union's proposal with the stipulation that the check-off provision would not be valid without a valid CBA. As Minster technically deviated from the terms and conditions of the former terms of the CBA, Minster first deviated from the status quo.
 {¶ 18} While the board's inquiry ended with this determination, it should not have. As stated above, Bays requires the Board to examine whether a compelling reason existed for Minster's deviation. Minster maintains that the dues-check off provision expired by operation of law upon the expiration of the CBA at 12:01a.m. April 7, 2002 and citesFarmland in support of this proposition. In response, Union argues that this court's decision in Farmland, supra was incorrect and should not be relied upon as it erroneously relied on federal labor law.
 {¶ 19} In Farmland, after the CBA expired but during negotiations, the employer sent a letter to the union stating that it would no longer recognize the CBA's arbitration provision, no strike/no lockout provision, and dues check-off provisions. This court found that since those terms expire by operation of law, the employer did not breach the status quo with respect to the terms and conditions of employment while they were negotiating. We also noted in support of our conclusion, that the employer sent a subsequent letter five days after the first which reflected that it would continue to maintain the status quo. While we are hesitant to characterize the check-off provision as "expiring by operation of law," it is unlawful under 29 U.S.C.A. § 186(C)(4) for Minster to remit any dues to a union when no CBA is in place because mandatory written authorization is required from each Union member for such deductions and that authorization ends when the CBA expires.Southwestern Steel Supply, Inc. v. N.L.R.B. (1986), 806 F.2d 1111,1114; U.S. Can Co. v. N.L.R.B. (1993), 984 F.2d 864, 869; Sullivan Bros.Printers, Inc. v. N.L.R.B., (1996), 99 F.3d 1217, 1232; See, also, OhioMun, Law, Ch. 11 Labor Relations Collective Bargaining Agreement, T 11.25 Deduction of Union Dues.[2] Furthermore, any person who violates U.S.C.A. § 186(C)(4) is subject to criminal charges which may result in monetary fines and/or a term of imprisonment. While not labeled as such in Farmland, we find the threat of criminal prosecution to be a "compelling reason" for deviating from the status quo. Similarly, as there was no valid CBA in place in this case when the offer to continue the terms and conditions of the former CBA was proposed by Union, Minster was unable to deduct the Union dues and had a compelling reason to deviate from the status quo.[3]
 {¶ 20} As Minster had a compelling reason to deviate from the status quo, we must now determine whether, under the circumstance in this case, the Union would have reasonably been expected to agree to continue the terms and conditions of the former CBA without the check-off provision. This provision provides that Minster will deduct the dues from the employees' paychecks and remit them to the Union. Without this provision the employees will merely be required to pay their dues directly to the union. While this change affects a bargained-for term of employment and as such is not merely procedural, this modification does not have the substantial effect on the Union members as would a reduction in pay or a change in work schedule. Furthermore, the contract without the check-off provision is only in effect for a reasonable time while Minister and Union continue to negotiate a renewal CBA. Consequently, the Union would reasonably have been expected to agree to an extension of the prior CBA without the check-off provision for this limited time.
 {¶ 21} Applying the hearing officer's findings of fact which are supported by the record and utilizing the applicable law as stated above, we cannot find that Minster locked-out its employees resulting in the Union strike. Consequently, the Union's unemployment was due to a labor dispute other than a lockout precluding Union from receiving unemployment benefits under R.C. 4141.29(D)(1)(a), and we therefore find that the decision of Job and Family Services is "unlawful, unreasonable and against the manifest weight of the evidence." Consequently, the Union's four assignments of error and the Department of Job and Family Services' two assignments of error are overruled and the judgment of the trial court is affirmed for the reasons state above.
Judgment affirmed.
WALTERS and CUPP, JJ., concur.
[1] While the hearing officer did not delineate times in the findings of fact, we find it necessary to refer to these facts as established in the record to provide a clear understanding of the chronology of events.
[2] While Union argues that an employee must revoke his authorization for the remittance of dues to violate federal law, N.L.R.B. cases have stated that § 186(c)(4) is "understood to prohibit such practices [remittance of union dues] unless they are codified in an existing
collective-bargaining agreement." Southwestern Steel, supra; see alsoSullivan, supra.
[3] We would note that Minster was lawfully able to deduct Union dues between March 25, 2002 and April 7 2002 because the CBA had been formally extended prior to the expiration of the CBA. When the offer was proposed to continue the terms and conditions of the former CBA past April 7, 2002, the CBA had already expired at 12:01 a.m. that evening.