# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 18, 2008        Decided April 28, 2009

No. 07-1455

TRIBUNE PUBLISHING COMPANY,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 07-1506

———

On Petition for Review and Cross-Application for
Enforcement of an Order
of the National Labor Relations Board

———

*L. Michael Zinser* argued the cause and filed the briefs for petitioner.

*Gregory P. Lauro*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Julie B. Broido*, Supervisory Attorney. *Jewel L. Fox*, Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, and GRIFFITH, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*:  Tribune Publishing Company petitions for review of the National Labor Relations Board's decision determining that the Company violated the National Labor Relations Act, 29 U.S.C. §§ 151-169 (2008), by unilaterally discontinuing the use of the Company's direct deposit system to collect union dues.  Because the National Labor Relations Board's decision is supported by substantial evidence and is consistent with the law, we deny the petition and grant the National Labor Relations Board's cross-application to enforce its order.

## Background

No factual issues appear to be in dispute.  Petitioner Tribune Publishing Company ("Tribune" or "Company") publishes a daily newspaper in Columbia, Missouri.  Certain press room employees, including operators of the printing presses, are represented by the Graphic Communications International Union ("Union").  In 1997 the Company and the Union entered into a collective bargaining agreement ("CBA"), which included a provision for payroll deduction of union dues upon written request of the employee.  (Commonly referred to as "dues checkoff.")  Approximately 37 employees used this procedure to have their union dues deducted from their paychecks.  The CBA expired on November 30, 2001.  The Company nevertheless continued dues checkoff until December 19, 2001, at which time it sent each employee a letter stating that the Company was exercising its legal right to discontinue payroll deduction of union dues because the CBA had expired.  Thereafter, the Union's secretary-treasurer apparently began

collecting union dues from each individual employee.

During this time period, Company policy provided for the direct deposit of an employee's paycheck into a bank account; direct deposit also allowed the employee to pay loans and deposit to other accounts such as savings. With this direct deposit provision in mind, after expiration of the contract and while the parties were bargaining for a new contract, the Union secretary-treasurer obtained a direct deposit authorization form, reproduced it 37 times, filled in some of the information on the forms and had each employee complete his or her form. He then took the forms to Tribune's administrative manager, Mary Twenter, who had previously been on the negotiating committee for the expired contract and had oversight responsibility for the Company's labor relations and human resources. Twenter told the Union secretary-treasurer that it was "a good idea" to use direct deposit for the payment of union dues and, accepted the direct deposit forms for processing. After a trial run in April, 2002, the Company effectuated the direct deposit of union dues on May 10, 2002, and provided to the Union an itemized list containing the names of the depositing employees and the amount of their dues payments. On May 24, 2002, however, after only a one-time use of direct deposit for payment of union dues, administrative manager Twenter sent a letter to each employee stating that direct deposit of union dues was being discontinued because dues checkoff had "been previously discontinued by the Company and the direct deposit transactions reinstated dues checkoff. Establishing direct deposit for dues was a mistake."

On May 30, 2002, the Union filed with the National Labor Relations Board ("NLRB" or "Board") an unfair labor practice charge against the Company. The NLRB investigated the charge and issued a complaint against the Company alleging, *inter alia*, that the Company violated Sections 8(a)(5) and (1) of

the National Labor Relations Act (the "Act") by unilaterally discontinuing the direct deposit of union dues. A hearing was held before an NLRB administrative law judge ("ALJ"), who determined that direct deposit of payroll deductions constitute working conditions of the Union employees and are therefore mandatory subjects of collective bargaining under the Act. He also determined that the direct deposit of union dues was a separate procedure unrelated to the CBA. The ALJ consequently found that the Company violated Sections 8(a)(5) and (1) of the Act[*] when it changed the working conditions of its employees by ceasing to allow direct deposit of union dues without affording the Union an opportunity to bargain about that conduct.

The Company filed exceptions to the ALJ's decision, and the matter was assigned to a three-member panel of the NLRB. In adopting the ALJ's conclusion that the Company violated Sections 8(a)(5) and (1) of the Act, the NLRB panel noted that, after expiration of the contract and unilateral cessation of the direct deposit of union dues by the Company, the Union secretary-treasurer met with Company administrative manager Twenter, and that during the meeting Twenter agreed with the Union secretary-treasurer to allow use of the direct deposit system for the payment of union dues. The panel also noted that the Company had implemented direct deposit of union dues for a full pay period. In light of these circumstances, the panel determined that the deduction and direct deposit of union dues became a new term and condition of employment. Since direct deposit of payroll deductions is a mandatory subject of bargaining, the panel stated, the Company was required to

---

[*]The ALJ also found that the unilateral termination by the Company of direct deposit of union dues violated Section 8(a)(3) of the Act, but the Board stated that it did not consider this finding as it would not materially affect the remedy.

bargain with the Union before it could terminate the deductions. Because it failed to bargain, the panel concluded that the Company violated Sections 8(a)(5) and (1) of the Act.

The Company now files with this court a petition for review, seeking reversal of the panel's conclusion and dismissal of the charges against it.

## Discussion

"We enforce a Board order if the factual findings upon which it rests are supported by 'substantial evidence,' *see United States Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998), and the Board's interpretation of the Act is reasonable and consistent with applicable precedent, *see Local 702, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 215 F.3d 11, 15 (D.C. Cir. 2000)." *Fashion Valley Mall, LLC. v. NLRB*, 451 F.3d 241, 243 (D.C. Cir. 2006).

Tribune argues that it was error for the NLRB panel to find that Tribune and the Union entered into a new agreement when the Company agreed to deduct union dues by way of direct deposit. Rather, Tribune contends, when it allowed its employees to directly deposit their union dues after expiration of the union contract, it was reinstituting the dues checkoff provision in that expired union contract. The Company, noting that the expired union contract provided for the withholding of union dues from employee paychecks, contends that this was in fact what direct deposit of union dues accomplished. Consequently, argues Tribune, dues checkoff and direct deposit of union dues are one and the same and the Company is privileged to discontinue either in the context of an expired union contract. Putting it another way, the Company asserts that, because it had the right to discontinue payroll deduction of union dues upon expiration of the union contract, when it

stopped direct deposit of union dues it "[o]nce again . . . exercised its right, in the context of an expired Collective Bargaining Agreement, to cease deducting money from the wages of employees in payment of membership dues to the union." Even if an oral agreement was reached, argues Tribune, if an employer can cease payroll deduction of union dues upon expiration of a union contract which contained an express provision for union dues deduction, "then surely the employer has the same right to cease payroll deduction of union dues pursuant [to] an informal oral agreement reached during a contract hiatus."

The NLRB responds by first noting that pursuant to §§ 8(a)(5) and (d) of the Act, it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees" with respect to "wages, hours, and other terms and conditions of employment." The NLRB asserts that this provision bars an employer from unilaterally discontinuing terms and conditions of employment that concern a mandatory subject of bargaining. Here, argues the NLRB, there is no serious dispute that direct deposit of union dues is a mandatory subject of bargaining. The NLRB consequently contends that when the Company agreed to directly deposit union dues, this was a new agreement concerning terms and conditions of employment that could not be unilaterally terminated by the Company. The NLRB argues that, therefore, the panel reasonably found that Tribune had violated §§ 8(a)(5) and (d) by unilaterally terminating the new agreement made with the Union. Although Tribune's arguments focus on the dues checkoff clause of the expired union contract, the NLRB contends, that contract is not relevant here because this case turns on whether Tribune reached a new agreement to use direct deposit to remit union dues.

Pursuant to the NLRA, employees have the right "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Furthermore, it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 157]," and "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. §§ 158(a)(1) and (5). The obligation to bargain collectively is defined as the meeting of the employer and representative of the employees to "confer in good faith with respect to wages, hours, and other terms and conditions of employment." 29 U.S.C. § 158(d). Pursuant to Board and court decisions, dues checkoff is a matter related to "wages, hours, and other terms and conditions of employment" within the meaning of the Act and is therefore a mandatory subject for collective bargaining. *See Quality House of Graphics, Inc.*, 336 N.L.R.B. 497, 511 & n.42 (2001) (citing various cases); *see also Sw. Steel & Supply v. NLRB*, 806 F.2d 1111, 1114 (D.C. Cir. 1986).

Under Board precedent, the expiration of a collective bargaining agreement that created payroll deduction of union dues results in the expiration of the employer's obligation to continue that deduction. *See Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1502 (1962). But after expiration of the agreement a company may, if it wishes, continue payroll deduction of union dues until such time it elects to cease making that deduction. *See Lowell Corrugated Container Corp.*, 177 N.L.R.B. 169, 173 (1969), *enf'd on other grounds*, 431 F.2d 1196 (1st Cir. 1970); *cf. Redway Carriers*, 274 N.L.R.B. 1359, 1377 (1985) (noting employer's continuation of dues checkoff notwithstanding expiration of contract between parties). The Company therefore claims, and the Union does not dispute, that after expiration of the contract the Company was at liberty to continue payroll deduction of union dues even though it could lawfully terminate the deduction.

The Company's primary argument is that the direct deposit of union dues was merely the "reinstitution" of dues checkoff under the CBA; the Company is claiming, in other words, that when the direct deposit of union dues was implemented it was as if the Company had never discontinued dues checkoff. That is, the Company effectively was still operating under the conditions of an expired CBA, i.e., that the Company was entitled to cease dues checkoff at its discretion. We disagree. When the Company discontinued dues checkoff, it unilaterally terminated the practice. Because it is undisputed that dues checkoff is a term or condition of employment, it could not be "reinstituted" under the expired CBA. *See NLRB v. Katz*, 369 U.S. 736, 743 (1962) (holding "that an employer's unilateral change in conditions of employment under negotiation is . . . a violation of s 8(a)(5)"). The practice could only be instituted again under a new agreement.

The Company argues that even if its argument that dues checkoff and direct deposit of union dues are identical is rejected, the use of direct deposit is nevertheless unauthorized under Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-144, 171-183, 185-187 (1998). Section 302 states that it is

> unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value . . . to any labor organization . . . which represents . . . any of the employees of such employer [except] with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable

collective agreement, whichever occurs sooner.

29 U.S.C. §§ 186(a), (a)(2), (c). The Company claims that the new agreement is not in accordance with Section 302 because union dues can be deducted from an employee's paycheck only if there is in existence a signed collective bargaining agreement that contains a provision authorizing payroll deduction of union dues. The Company suggests that no such agreement was created at the time direct deposit of union dues took place. The NLRB, in turn, claims that Tribune errs when it argues that under Section 302 the direct deposit agreement could not be enforced because there was no signed, existing union contract. Taking issue with Tribune's argument that Section 302 requires that any agreement for payroll deduction of union dues must be in writing in a signed union contract, the NLRB asserts that Tribune cites no cases to support that claim. Noting that Section 302 provides for deduction of union dues if employees have given written consent and that their consent is revocable after a year or, if sooner, the expiration of the union contract, the NLRB states that there is no dispute that the direct deposit authorizations at issue here were revocable at will.

The Company suggests that even if it is determined that it made a new agreement to use direct deposit to deduct union dues, the agreement is void because Section 302 of the LMRA requires that any such agreement be reduced to writing in a signed CBA. But the Company, as the NLRB points out, cites no authority for this claim. Section 302 does not require a written collective bargaining agreement. In order for payroll deduction of union dues to be lawful, Section 302 requires merely that employees give written consent that is revocable after a year. Here, as even the Company describes it, the direct deposit of union dues was "a written assignment, and . . . nothing but dues deduction in an altered form." Presumably most of the time payroll deductions of union dues will in fact be

made pursuant to a CBA provision. But such procedure is not the only one available; as the ALJ noted, employees might choose the Company's direct deposit procedure over any collective bargaining agreed upon dues deduction procedure.

We have considered the Company's remaining arguments and find them to be without merit. In sum, we conclude that the NLRB's decision has substantial evidentiary support and is consistent with the law.

## Conclusion

For the reasons set forth above, we deny the Company's petition for review and grant the NLRB's cross-application to enforce its order.