**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| VALLEY HOSPITAL MEDICAL CENTER, INC., | No. 22-1804 |
| *Petitioner*, | NLRB No. 28-CA-213783 |
| v. | ORDER AND AMENDED OPINION |
| NATIONAL LABOR RELATIONS BOARD, | |
| *Respondent*, | |
| --------------------------------------- | |
| LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS, | |
| *Intervenor*. | |

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, | No. 22-1978 |
| *Petitioner*, | NLRB No. 28-CA-213783 |
| v. | |
| VALLEY HOSPITAL MEDICAL CENTER, INC., | |
| *Respondent*. | |

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted December 6, 2023
Pasadena, California

Filed February 20, 2024
Amended May 6, 2024

Before: Diarmuid F. O'Scannlain and John B. Owens,
Circuit Judges, and Matthew F. Kennelly, District Judge.[*]

Order;
Opinion by Judge O'Scannlain;
Special Concurrence by Judge O'Scannlain

_____

**SUMMARY**[**]

_____

**Labor Law**

The panel filed (1) an order denying a petition for rehearing en banc and amending the opinion and special concurrence filed on February 20, 2024; and (2) an amended opinion and an amended special concurrence denying Valley Hospital Medical Center's petition for review, granting the National Labor Relations Board's cross-application for

_____

[*] The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

enforcement, and enforcing the Board's order finding that Valley Hospital engaged in an unfair labor practice under the National Labor Relations Act ("NLRA") by unilaterally ceasing union dues checkoff.

The court previously remanded the case to the Board to explain better its decision that an employer may unilaterally cease union dues checkoff after the expiration of a collective bargaining agreement. On remand, the Board changed its mind, and rendered a new decision (1) readopting its prior rule prohibiting employers from unilaterally ceasing dues checkoff after expiration of a collective bargaining agreement, and (2) finding that Valley Hospital engaged in an unfair labor practice.

Valley Hospital argued that the Board exceeded its authority because this court's mandate authorized the Board to supplement its reasoning but not to change its interpretation of the NLRA. As a preliminary matter, the panel held that it had jurisdiction to consider Valley Hospital's argument. The panel held that this court's mandate did not clearly foreclose reconsideration of the Board's underlying rule regarding dues checkoff after expiration of the applicable collective bargaining agreement, and therefore the Board was not bound by its prior decision.

Valley Hospital next argued that the panel should affirm the Board's first decision ("*Valley Hospital I*") as the most reasonable interpretation of the NLRA based on the explanation in the dissenting opinion in the Board's decision on remand ("*Valley Hospital II*"). The panel stated that it was reviewing the Board's decision on remand in *Valley Hospital II*, not the Board's decision in *Valley Hospital I* or the dissenting opinion in *Valley Hospital II*. The panel held that the Board followed a proper decisionmaking process in

*Valley Hospital II* by providing a reasoned explanation for overruling its prior decision, and applied a permissible interpretation of the NLRA.

Judge O'Scannlain specially concurred to highlight a troubling trend where the Board frequently changes its mind depending on its political composition, as illustrated by its changing approach in this case to union dues checkoff by employers pursuant to a collective bargaining agreement.

## COUNSEL

Proloy K. Das, I., (argued), Ford Harrison LLP, Hartford, Connecticut; Thomas Keim, Ford Harrison LLP, Spartanburg, South Carolina; Tammie Rattray, Ford Harrison LLP, Tampa, Florida; for Petitioner Valley Hospital Medical Center, Inc..

Eric Weitz (argued), Attorney; Kira D. Vol, Supervisory Attorney; David Habenstreit, Assistant General Counsel; Ruth E. Burdick, Deputy Associate General Counsel; Peter S. Ohr, Deputy General Counsel; Jennifer A. Abruzzo, General Counsel; National Labor Relations Board, Washington, D.C; for Respondent National Labor Relations Board.

Kimberley C. Weber (argued), McCracken Stemerman & Holsberry LLP, Oakland, California, for Intervenor Local Joint Executive Board of Las Vegas.

## ORDER

The opinion and Judge O'Scannlain's special concurrence filed on February 20, 2024, and published at 93 F.4th 1120 (9th Cir. 2024) are amended by the opinion and respective concurrence filed concurrently with this order.

Judge Owens voted to deny Valley Hospital's petition for rehearing en banc, and Judge O'Scannlain and Judge Kennelly so recommended. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

O'SCANNLAIN, Circuit Judge:

We previously remanded this case to the National Labor Relations Board to explain better its decision that an employer may unilaterally cease union dues checkoff after the expiration of a collective bargaining agreement. Instead, the Board changed its mind and rendered a new decision to the contrary. We must decide whether its new decision violated our mandate and whether that decision was rational and consistent with the National Labor Relations Act.

# I

## A

The Local Joint Executive Board of Las Vegas ("the Union") represented employees at Valley Hospital Medical Center ("Valley Hospital"), a hospital in Las Vegas, Nevada. The Collective Bargaining Agreement ("the Agreement") between the Union and Valley Hospital included a checkoff provision that required Valley Hospital to deduct union dues from participating employees' paychecks and remit those dues to the Union. The Agreement also included a union security provision that required certain Valley Hospital employees to be Union members. Because Nevada is a right-to-work state, the union security provision was not applicable. Nev. Rev. Stat. § 613.250.

The Agreement expired, and Valley Hospital initially continued dues checkoff. But about thirteen months later, Valley Hospital stopped deducting dues, without an agreement in place and without negotiating with the Union. The Union filed an unfair labor practice charge, the Board Regional Director issued a complaint, and an Administrative Law Judge dismissed the complaint.

On review, the National Labor Relations Board ("the Board") also dismissed the complaint. *Valley Hosp. Med. Ctr., Inc.*, 368 N.L.R.B. No. 139, slip op. at 9 (2019) ("*Valley Hospital I*"). The Board overruled its precedent requiring employers to continue dues checkoff after the expiration of a collective bargaining agreement and reinstated a longstanding rule that employers have no such obligation. *Id.* at 8-9.

We granted the Union's petition for review and remanded the case because the Board's "contract creation

rationale" failed to acknowledge apparent departures from Board precedent. *Local Joint Exec. Bd. v. NLRB*, 840 F. App'x 134, 137 (9th Cir. 2020) ("*LJEB V*") (remanding so that the Board could "explicitly address the prior decisions").[1]  We did not vacate the Board's decision because we recognized that the Board would likely be able to cure the flaw in its reasoning. *Id.* at 137-38.  But we also acknowledged that the Board has discretion and "may change direction." *Id.* at 137.

On remand, the Board indeed changed direction.  The Board reversed its decision in *Valley Hospital I*, readopted its prior rule prohibiting employers from unilaterally ceasing dues checkoff after expiration of a collective bargaining agreement, and found that Valley Hospital engaged in an unfair labor practice. *Valley Hosp. Med. Ctr., Inc.*, 371 N.L.R.B. No. 160, slip op. at 17 (2022) ("*Valley Hospital II*").  Valley Hospital now petitions for review, and the Board applies for enforcement.

## B

The National Labor Relations Act ("NLRA") requires employers and unions to bargain collectively over "terms and conditions of employment," including dues checkoff. 29 U.S.C. § 158(d); *Tribune Publ'g Co. & Graphic Commc'ns Int'l*, 351 N.L.R.B. 196, 197 (2007), *enforced*, 564 F.3d 1330 (D.C. Cir. 2009).  Refusing to bargain over terms and conditions, known as "mandatory subjects of bargaining," is an unfair labor practice. 29 U.S.C. § 158(a)(5); *see, e.g.*,

---

[1] Several relevant cases have identical names.  To minimize confusion, we refer to these as *LJEB I—LJEB V*.  The first four cases, *LJEB I-IV*, concern a different dispute between the Union and a hotel and casino operator. *LJEB I-III* are discussed below, and *LJEB IV*, 883 F.3d 1129 (9th Cir. 2018), addressed the remedy in that dispute.

*LJEB I*, 309 F.3d 578, 581-82 (9th Cir. 2002) (referring to "mandatory subjects"). An employer violates its duty to bargain by unilaterally changing terms and conditions of employment during negotiations. *NLRB v. Katz*, 369 U.S. 736, 743 (1962); *see also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991) (the same rule applies during negotiations after the expiration of a collective bargaining agreement). Under *Katz*'s "unilateral change doctrine," when a collective bargaining agreement expires, its terms and conditions persist under the NLRA. *LJEB II*, 540 F.3d 1072, 1078 (9th Cir. 2008).

The unilateral change doctrine has exceptions. *See, e.g.*, *Litton*, 501 U.S. at 199 (collecting exceptions). For example, union security provisions must expire with the collective bargaining agreement. *Id.* For many decades, dues checkoff was one of these exceptions. In *Bethlehem Steel Co.*, the Board reasoned that an employer's obligation to deduct and to remit dues under a checkoff provision expired with the agreement because dues checkoff provisions "implemented the union-security provisions." 136 N.L.R.B. 1500, 1502 (1962), *remanded on other grounds sub nom. Indus. Union of Marine & Shipbuilding Workers of Am. v. NLRB*, 320 F.2d 615 (3d Cir. 1963).

The Board routinely applied *Bethlehem Steel* until this court questioned its application in right-to-work states that prohibit union security provisions. *LJEB I*, 309 F.3d at 583-84; *LJEB II*, 540 F.3d at 1082; *LJEB III*, 657 F.3d 865, 876 (9th Cir. 2011). After the Board could not reach a decision, we interpreted the NLRA ourselves and held that, in right-to-work states where dues checkoff cannot "implement" union security provisions, dues checkoff is "akin to any other term of employment that is a mandatory subject of bargaining," and cannot be unilaterally changed during

negotiations. *LJEB III*, 657 F.3d at 876. The Board subsequently overruled *Bethlehem Steel*. *Lincoln Lutheran of Racine*, 362 N.L.R.B. 1655, 1662-63 (2015); *see also WKYC-TV, Inc.*, 359 N.L.R.B. 286, 293 (2012) (overruling *Bethlehem Steel*), *invalidated by NLRB v. Noel Canning*, 573 U.S. 513 (2014).

That brings us to this dispute. In *Valley Hospital I*, the Board overruled *Lincoln Lutheran* and reinstated the longstanding rule from *Bethlehem Steel*. 368 N.L.R.B. No. 139 at 8-9. Then, following our remand, the Board in *Valley Hospital II* reversed *Valley Hospital I* and readopted the rule from *Lincoln Lutheran* prohibiting employers from unilaterally ceasing dues checkoff after expiration of the collective bargaining agreement. 371 N.L.R.B. No. 160 at 17.

## II

Valley Hospital raises two arguments, which we address in turn. Valley Hospital first argues that the Board exceeded its authority because our mandate authorized the Board to supplement its reasoning but not to change its interpretation of the NLRA. The mandate rule jurisdictionally bars district courts and agencies from revisiting matters that this court has decided. *United States v. Thrasher*, 483 F.3d 977, 981-82 (9th Cir. 2007) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-56 (1895)); *see also Cal. Pub. Utils. Comm'n v. FERC*, 29 F.4th 454, 462 (9th Cir. 2022) (applying the mandate rule to agency adjudication). "An administrative agency may therefore consider on remand 'any issue not expressly or impliedly disposed of on appeal.'" *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1280 (9th Cir. 2018) (quoting *Stacy v. Colvin*, 825 F.3d 563, 568 (9th Cir. 2016)).

## A

As a preliminary matter, we must determine whether we have jurisdiction to consider Valley Hospital's argument. As the Board observes, Valley Hospital did not raise its mandate rule argument before the Board.  Under section 10(e) of the NLRA, we lack jurisdiction to consider objections that were not raised before the Board, unless excused by "extraordinary circumstances."   29 U.S.C. § 160(e); *see also id.* § 160(f) (incorporating same standard); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982).  Yet we have also recognized that "[w]hen § 10(e) bars our consideration of a party's objection . . . the Board is entitled to enforcement unless the Board has 'patently traveled outside the orbit of its authority.'  In such a case, there would be 'legally speaking no order to enforce.'"  *Int'l Union of Painter & Allied Trades v. J & R Flooring, Inc.*, 656 F.3d 860, 867 (9th Cir. 2011) (quoting *NLRB v. Cheney Cal. Lumber Co.*, 327 U.S. 385, 388 (1946)); *see also Polynesian Cultural Ctr., Inc. v. NLRB*, 582 F.2d 467, 472 (9th Cir. 1978) ("[J]urisdiction in the sense of 'power to hear and determine the controversy' . . . can be questioned at any time . . . ." (quoting *NLRB v. Pappas*, 203 F.2d 569, 571 (9th Cir. 1953))).

The mandate rule limits the jurisdiction of district courts and agencies on remand.  If the Board did not follow our mandate, it would be patently obvious that the Board exceeded its authority. *Accord Carroll Coll., Inc. v. NLRB*, 558 F.3d 568, 574 (D.C. Cir. 2009) ("A court can always invalidate Board action that is patently beyond the Board's jurisdiction, even if the jurisdictional challenge was never presented to the Board." (citation omitted)); *cf. Noel Canning v. NLRB*, 705 F.3d 490, 497-98 (D.C. Cir. 2013) (a constitutional challenge to the appointments of Board

members was an "extraordinary circumstance" that could be considered for the first time by a circuit court); *contra Quality Health Servs. of P.R., Inc. v. NLRB*, 873 F.3d 375, 383 (1st Cir. 2017) (section 10(e) barred consideration of a challenge to the services of a single officer as opposed to a challenge to "the Board's authority to act").   Accordingly, we have jurisdiction to consider Valley Hospital's argument.

## B

When a case is remanded, an agency is confined by the clear scope of the mandate, but it is free to decide any issues not foreclosed by the mandate. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) ("The mandate requires respect for what the higher court decided, not for what it did *not* decide." (cleaned up)).   Our earlier mandate did not clearly foreclose reconsideration of the Board's underlying rule regarding dues checkoff after expiration of the applicable collective bargaining agreement.   Using conditional language, we concluded, "[I]t does not necessarily follow that the Board's rule must be vacated," and we predicted that the Board "likely will be able to cure the identified flaw . . . ." *LJEB V*, 840 F. App'x at 137.   We also noted that the Board "has discretion to adopt its preferred rule" and "may change direction yet again." *Id.* We never considered whether the Board's interpretation of the NLRA was permissible, much less whether it was required.   It would offend the Administrative Procedure Act's scheme of "reasoned decisionmaking" to bind the Board to a decision whose merits neither the Board nor we adequately considered. *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).   Accordingly, the Board was not bound by its prior decision.

## III

Valley Hospital next argues that *Valley Hospital I* is the "most reasonable" interpretation of the NLRA, and it asks us to "affirm" the rule of *Valley Hospital I* based on the explanation provided by the dissent in *Valley Hospital II*.

## A

Exactly which decision are we reviewing?  Because our earlier judgment did not prohibit the Board from reconsidering *Valley Hospital I*, we cannot reinstate a decision that the Board itself reversed.  *Valley Hospital II*, 371 N.L.R.B. No. 160 at 17.  Nor can we approve a Board decision on the basis of a dissenting opinion at the Board. When reviewing agency actions, courts are limited to considering the agency's explanation.  *Alaska Eskimo Whaling Comm'n v. EPA*, 791 F.3d 1088, 1093 (9th Cir. 2015) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  We are not aware of any case—and Valley Hospital does not cite any—relying on a dissenting opinion in an agency action to justify an earlier action that the agency reversed.

The law confirms what common sense dictates: a dissent is not an action by the Board.  *See* 29 U.S.C. § 153(b) (three members constitute a quorum of the Board unless the Board has delegated its authority to a three-member panel); *New Process Steel, LP v. NLRB*, 560 U.S. 674, 686 (2010) ("[W]e are not persuaded . . . that we should read the statute to authorize the Board to act with only two members . . . ."). And we have rejected Valley Hospital's approach in the past. In *LJEB III*, the Board could not reach a majority decision and affirmed its rule in *Bethlehem Steel* on procedural grounds because the four members were evenly split.  657 F.3d at 867.  We interpreted the NLRA ourselves, rather than

relying on one of the non-majority opinions, much less reinstating a prior order of the Board. *Id.* at 874. In this case, we review the Board's decision on remand, *Valley Hospital II*.

## B

We will enforce a Board order when the Board's factual findings are supported by substantial evidence, and the Board correctly applied the law. *NLRB v. Nexstar Broadcasting, Inc.*, 4 F.4th 801, 805-06 (9th Cir. 2021) (citing 29 U.S.C. § 160(e)). The facts are not disputed here, so we will enforce the Board's order so long as the Board followed a proper decisionmaking process and applied a permissible interpretation of the NLRA. The Board has primary responsibility for "developing and applying national labor policy." *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990). Because the NLRA is ambiguous regarding dues checkoff, *LJEB III*, 657 F.3d at 874, we defer to the Board's interpretation "as long as it is rational and consistent with the Act," *Curtin Matheson*, 494 U.S. at 787; *accord LJEB III*, 657 F.3d at 870 (citing *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)).[2]

---

[2] In its petition for rehearing en banc, Valley Hospital suggests that we stay consideration pending the Supreme Court's decisions in *Loper Bright Enterprises v. Raimondo*, U.S. No. 22-451 and *Relentless, Inc. v. Department of Commerce*, U.S. No. 22-1219. But Valley Hospital did not raise this argument earlier and instead asked us to defer to the Board's *Valley Hospital I* interpretation. Even if we interpreted the statute ourselves, the result would not change. This court has already independently interpreted the NLRA to prohibit unilateral cessation of dues checkoff after the expiration of the collective bargaining agreement in a right-to-work state, and we are bound by that precedent. *LJEB III*, 657 F.3d at 876. While the Board may reinterpret the statute, *see id.* (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545

**1**

We must hold unlawful and set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When an agency overrules its prior decisions, it must acknowledge the change and provide a reasoned explanation. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). "[I]t suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better . . . ." *Id.* Here, the Board acknowledged that it departed from the precedent of *Bethlehem Steel* and *Valley Hospital I* and believed that it was adopting a "better interpretation of the Act and its policies." *Valley Hospital II*, 371 N.L.R.B. No. 160 at 17. The Board also provided thorough reasoning to support its new interpretation of the NLRA. The Board weighed policy considerations and compared dues checkoff to other exceptions to the unilateral change doctrine. Valley Hospital has not challenged the Board's decisionmaking process; we are persuaded that the Board acted rationally by adequately considering and explaining its decision.

**2**

The Board's interpretation of the NLRA is permissible so long as it is not "manifestly contrary" to the NLRA. *The Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) (en banc) (quoting *Chevron*, 467 U.S. at 844). As a matter of Ninth Circuit law, the Board's interpretation was permissible in this case. In *LJEB III*, we independently interpreted the NLRA to prohibit the

U.S. 967, 982-83 (2005)), we cannot as a three-judge panel, *see, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).

unilateral cessation of dues checkoff following expiration of a collective bargaining agreement in a right-to-work state. 657 F.3d at 875-76. *LJEB III* involved similar terms in the same right-to-work state, Nevada. *See LJEB II*, 540 F.3d at 1075-76. The Board's interpretation, which followed our own, was permissible under the NLRA, at least as applied to parties in a right-to-work state.

## IV

For the foregoing reasons, we DENY Valley Hospital's petition for review, GRANT the Board's cross-application for enforcement, and ENFORCE the Board's order.

**PETITION DENIED; CROSS-APPLICATION GRANTED; ORDER ENFORCED.**

O'SCANNLAIN, Circuit Judge, specially concurring:

I write separately to highlight a troubling trend. The National Labor Relations Board ("the Board") frequently changes its mind, seesawing back and forth between statutory interpretations depending on its political composition, leaving workers, employers, and unions in the lurch. *See, e.g.*, Zev J. Eigen & Sandro Garofalo, *Less Is More: A Case for Structural Reform of the National Labor Relations Board*, 98 Minn. L. Rev. 1879, 1887 (2014) ("[N]ewly constituted Boards have made a practice of overruling precedent created by past administrations' Boards, with each Board instituting its own set of politically-motivated rules.").

The Board's ever-changing approach to union dues checkoff by employers pursuant to a collective bargaining agreement illustrates well the Board's instability. For 49

years, an employer could unilaterally cease dues checkoff after the applicable collective bargaining agreement expired. *Bethlehem Steel Co.*, 136 N.L.R.B. 1500, 1502 (1962), *remanded on other grounds sub nom. Indus. Union of Marine & Shipbuilding Workers of Am. v. NLRB*, 320 F.2d 615 (3d Cir. 1963). After this court questioned that rule's application in right-to-work states, *see supra*, Op. at 8–9, the Board scrapped it entirely and held instead that employers could not unilaterally cease dues checkoff. *WKYC-TV, Inc.*, 359 N.L.R.B. 286, 293 (2012). That decision was later invalidated because of a separate Supreme Court ruling, *NLRB v. Noel Canning*, 573 U.S. 513 (2014), and the Board reinstated the prohibition one year later, *Lincoln Lutheran of Racine*, 362 N.L.R.B. 1655, 1662-63 (2015). Then the Board's composition changed and so did its legal interpretation. *Valley Hosp. Med. Ctr., Inc.*, 368 N.L.R.B. No. 139 (2019) ("*Valley Hospital I*"). After we remanded *Valley Hospital I*, the Board's composition and interpretation changed once more. *Valley Hosp. Med. Ctr., Inc.*, 371 N.L.R.B. No. 160 (2022) ("*Valley Hospital II*"). In sum, for 49 years, an employer could unilaterally cease dues checkoff after the agreement expired; then *Lincoln Lutheran* prohibited unilateral cessation for four years; *Valley Hospital I* once again allowed it for three years; and now, for the past two years, *Valley Hospital II* has prohibited unilateral cessation.

Union dues checkoff is far from the only subject on which the Board has vacillating views. *See* Eigen & Garofolo, *supra*, at 1887-1892 (describing the Board's "flip-flop problem"); *see also* Alexander MacDonald, *The Labor Law Enigma: Article III, Judicial Power, and the National Labor Relations Board*, 24 Federalist Soc'y Rev. 304, 328-29 (2023); Amy Semet, *Political Decision-Making at the*

*National Labor Relations Board: An Empirical Examination of the Board's Unfair Labor Practice Disputes Through the Clinton and Bush II Years*, 37 Berkeley J. Emp. & Lab. L. 223, 230 (2016) (noting "frequent flip-flops over some of the most important legal issues coming before the Board"). Consequently, workers, employers, and unions can only guess at their rights and obligations under the National Labor Relations Act ("NLRA"). Eigen and Garofalo, *supra*, at 1885. To be sure, agency interpretations and policies should not be set in stone. As the Board handles cases, one would expect it to learn through experience, building upon cumulative wisdom in an "evolutionary approach." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265-66 (1975). But the Board is not changing labor law through incremental progression. Rather, it veers violently left and right, a windsock in political gusts.

Beyond the practical difficulties it creates, the Board's approach also raises fundamental concerns about how courts interpret the NLRA and other statutes administered by agencies. *See, e.g.*, Transcript of Oral Argument at 24-25, 74, *Loper Bright Enters. v. Raimondo*, ___ U.S. ___ (2024) (No. 22-451). In particular, the Board's mercurial interpretation implicates two frequent justifications for *Chevron* deference: (1) the need for uniform national regulatory policy and (2) the subject-matter expertise of agencies. *See generally Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also, e.g.*, *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir. 1997) (discussing uniformity and expertise as *Chevron*'s "policy underpinnings"). But today, neither justification compels deference. The Board's "flip-flop problem" creates nationally unstable labor policy, consistent from one state to another but not from one day to the next. Eigen & Garofalo,

*supra*, at 1887; *see also* Robert Iafolla, *NLRB Dials Back Employers' Authority to Act Unilaterally*, Bloomberg Law (Aug. 30, 2023), https://www.bloomberglaw.com/bloomberglawnews/daily-labor-report/X596N79C000000?bna_news_filter=daily-labor-report [https://perma.cc/74WQ-AM6U] (describing a lawyer's view that "no employer or union can rely on NLRB precedent because the board is partisan and will flip-flop after control of the White House changes from party to party").  And, at best, it is unclear whether the Board exercises policy expertise or instead vindicates ideological preferences.  *See* Semet, *supra*, at 292 ("Expertise [falls] to the wayside and serves as the smokescreen for political influence.").  In short, we too often defer to an unstable body of labor law built on political predilection rather than policy expertise.

While the Board is notorious for its changes in interpretation, it is far from the only agency to modify its legal views alongside its political ones.  *See* Richard J. Pierce, Jr., *The Future of Deference*, 84 Geo. Wash. L. Rev. 1293, 1309-12.  "[I]t seems wrong in some important sense to acquiesce in a legal regime that allows myriad changes in the meaning of legal terms every time a President of one party replaces a President of the other party."  *Id.* at 1312.  But that is precisely what our deference doctrines allow.  Perhaps the time has come to reevaluate those doctrines.

Our holding today is narrow.  Because the Board adequately explained its reasoning and reached a result not at odds with the NLRA, it can require employers to continue dues checkoff after the expiration of the applicable collective bargaining agreement—at least until the next time that the Board changes its mind.